# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARCUS ROGERS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>WEXFORD HEALTH CARE SOURCES, )<br>DR. SHAH, )<br>PHIL MARTIN, )<br>and ROGERICK MATTICKS, )<br>)<br>Defendants. ) | Case No. 16−cv−1294−NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Marcus Rogers, an inmate in East Moline Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 relating to defendants' treatment of pain in Plaintiff's back, neck, and shoulder at Robinson Correctional Center. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

1

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; this action is subject to summary dismissal.

### The Complaint

In his Complaint (Doc. 1), Plaintiff makes the following allegations: Plaintiff went to sick call on March 3, 2016 for "extreme pain" in his back, neck, and shoulder. (Doc. 1, p. 6). He was given Ibuprofen, and two weeks later, was seen by Shah, a doctor, who told Plaintiff he had a pulled muscle and also needed to lose weight. *Id.* Plaintiff claims many inmates are told this, or that they have arthritis or need to drink more water, when they visit the doctor. *Id.* Plaintiff asked for an x-ray, but was told by Martin, the Health Care Unit Administrator, that he did not need an x-ray as his was a muscle issue. *Id.* On March 18, 2016, Shah ordered x-rays for Plaintiff, stating that the problem could be a pinched nerve. *Id.* Plaintiff was refused pain medication at that time. *Id.* On April 18, 2016, Plaintiff "asked Dr. Shah about an MRI," to which he responded that Plaintiff need to lose weight and drink more water. *Id.* On April 19, 2016, when the test results came back, Martin stated that Plaintiff's x-rays showed "mild degenerative changes." *Id.*

Plaintiff claims that Wexford Health Care Sources does not want to send him, or other inmates, to outside facilities for MRIs. (Doc. 1, p. 7). Plaintiff alleges that this, along with other cost cutting measures including using cheap medication, are the result of "a custom and policy" of Wexford cutting costs associated with inmate care because Wexford "is under a budgeted bid through IDOC." *Id.* Plaintiff seems to be attributing the defendants' failure to send him to an outside facility for an MRI, despite their awareness of his "continuing problems [and] pain associated with the problems in in neck and shoulders," to this policy. *Id.* Plaintiff requests monetary damages from each of the defendants. (Doc. 1, p. 8).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to designate a single count in this *pro se* action. The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**Count 1:** Defendants exhibited deliberate indifference to Plaintiff's serious medical needs related to the extreme pain in his back, neck, and shoulder in violation of the Eighth Amendment.

As to this claim, the Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle*, 429 U.S. at 106. *See also Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference

3

involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm . . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit has held that a medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). *See also Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D. N.H. 1977); *Mahan v. Plymouth County House of Corr.*, 64 F.3d 14, 18 (1st Cir. 1995); *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006; *Sheldon v. Penzley*, 49 F.3d 1312, 1316 (8th Cir. 1995); *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996); *Hill v. DeKalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1186 (8th Cir. 1994).

The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain"; (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (3) "presence of a

medical condition that significantly affects an individual's daily activities"; or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000) (officers were on notice of seriousness of condition of prisoner with ruptured appendix because he "did his part to let the officers know he was suffering"). The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (courts will not take sides in disagreements with medical personnel's judgments or techniques). However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (discussing *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996)).

Plaintiff claims that defendants Shah and Martin were deliberately indifferent in refusing to refer him to an outside facility for an MRI for his "continuing problems and pain." (Doc. 1, p. 7). Plaintiff's pain issues, per the Complaint, began on March 3, 2016. (Doc 1, p. 6). Plaintiff claims he inquired about an MRI as late as April 18, 2016, approximately six weeks later, but does not allege that the pain continued any longer than that. *Id.* According to the Complaint, Shah told Plaintiff initially he likely had a pulled muscle and needed to lose weight, but after receiving the results from the x-ray, Martin indicated that Plaintiff's results "showed mild degenerative changes." *Id.* While Plaintiff's condition may constitute a serious medical need, this Court does not have the information necessary to make such a determination, as there is little

information in the Complaint regarding the duration of the condition, the severity of the condition, and how it may affect or may have affected Plaintiff's daily activities.

Even assuming Plaintiff adequately alleged that his medical needs were serious, the allegations in the Complaint show that Plaintiff received nearly continuous care from his first sick call in early March to his request for an MRI in mid-April 2016. *Id.* This care included Plaintiff being given Ibuprofen for pain, seeing Dr. Shah shortly thereafter, receiving an x-ray within 15 days of claiming pain, receiving the results approximately one month later, and discussing his diagnosis with Health Care Administrator Martin at that time. *Id.* Plaintiff, rightfully, does not allege there was undue delay in his treatment. Instead, he seems to find a constitutional violation based on his opinion as to what treatment he should have received from the defendants.

Mere disagreement with a physician's chosen course of medical treatment does not amount to deliberate indifference under the Eighth Amendment, however. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not takes sides in disagreements about medical personnel's judgments or techniques); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a difference of opinion between medical professionals concerning the treatment of an inmate will not support a claim for deliberate indifference. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Garvin*, 236 F.3d at 898.

Plaintiff's clear disagreement with the defendants' chosen course of treatment and apparent belief that an MRI would have been more appropriate is therefore not enough to elevate

6

his claims of deliberate indifference to adequately state a claim upon which relief can be granted. (Doc. 1, pp. 6-7). Plaintiff's expressed skepticism as to how defendants could "see any mild degenerative changes in an x-ray" and why he received an x-ray if Shah thought it was a muscle issue is therefore unavailing. (Doc. 1, p. 6). Plaintiff's issue was identified via x-ray, and there is no indication it was inaccurate in any way. An MRI does not seem to have been necessary, despite Plaintiff's desire for one.

Plaintiff received care from the time he alleges his pain began to when the source of his pain was diagnosed, and he does not claim that his care was necessarily ineffective or that his pain is ongoing. There is no indication that Shah and Martin's treatment of Plaintiff constituted "inadvertent error, negligence or even ordinary malpractice," much less rose to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). Plaintiff has thus not shown that defendants Shah and Martin were deliberately indifferent to his medical needs.

With respect to defendant Wexford Health Care Sources, the Seventh Circuit has held that a corporate entity violates an inmate's constitutional rights, in this case showing deliberate indifference to Plaintiff's serious medical needs, only when it has a policy that creates conditions that infringe upon an inmate's constitutional rights. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Plaintiff has failed to sufficiently allege that his constitutional rights were infringed with respect to the care that he received. Despite his allegation that Wexford may maintain a policy to use "cost considerations" and give "cheaper medications," he does not

sufficiently connect this alleged policy to any unconstitutional deprivation. (Doc. 1, p. 7). Defendant Wexford shall therefore also be dismissed at this time.

Finally, with respect to Defendant Matticks, Plaintiff has failed to make any specific allegation against him. It is well established that "[f]or constitutional violations under § 1983 ... a government official is only liable for his or her own misconduct." *E.g.*, *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. June 5, 2015). This means that to recover damages against a prison official acting in a supervisory role, a § 1983 plaintiff may not rely on a theory of respondeat superior and must instead allege that the defendant, through his or her own conduct, has violated the Constitution. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Aside from a general description of Matticks's role as "Medical Director for the Southern District," Plaintiff does not provide any facts that implicate Matticks in this case, so he will also be dismissed.

Based on the foregoing, Count 1 against Shah, Martin, Wexford Health Sources, and Matticks will be dismissed. Out of an abundance of caution, this dismissal shall be without prejudice.

## Pending Motions

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), which is hereby **DENIED** without prejudice**.** There is no constitutional or statutory right to appointment of counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). Federal District Courts have discretion under 28 U.S.C. § 1915(e)(1) to request counsel to assist *pro se* litigants. *Id.* When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

With regard to the first step of the inquiry, there is no indication whether Plaintiff has attempted to obtain counsel on his own or has been effectively precluded from doing so. Because Plaintiff has not made this showing, the Court finds that Plaintiff has not made a reasonable attempt to find counsel. Therefore, denial of Plaintiff's motion for the appointment of counsel is appropriate.

Plaintiff has also filed a Motion for Service of Process at Government Expense (Doc. 4), which is hereby **DENIED** as moot because Plaintiff has been given leave to proceed in forma pauperis in this case and, further, Plaintiff's Complaint is being dismissed, rendering service unnecessary.

### Disposition

**IT IS HEREBY ORDERED** that this case is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file his First Amended Complaint, stating any facts which may exist to support a medical indifference claim related to his back, neck, and shoulder pain, within 28 days of the entry of this order (on or before **March 29, 2017**). Should Plaintiff fail to file his First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire action shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. FED. R. APP. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

Should Plaintiff decide to file a First Amended Complaint, it is strongly recommended

9

that he use the forms designed for use in this District for such actions. He should label the form, "First Amended Complaint," and he should use the case number for *this* action (*i.e.* 16-cv-1294-NJR). The pleading shall present each claim in a separate count, and each count shall specify, *by name*, each defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that defendant. Plaintiff should attempt to include the facts of his case in chronological order, inserting each defendant's name where necessary to identify the actors. Plaintiff should refrain from filing unnecessary exhibits. Plaintiff should *include only related claims* in his new complaint. Claims found to be unrelated to the Eighth Amendment deliberate indifference claims will be severed into new cases, new case numbers will be assigned, and additional filing fees will be assessed.

Plaintiff is warned that the Court takes the issue of perjury seriously, and that any facts found to be untrue in the First Amended Complaint may be grounds for sanctions, including dismissal and possible criminal prosecution for perjury. *Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014) (dismissing a lawsuit as a sanction where an inmate submitted a false affidavit and subsequently lied on the stand).

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original Complaint. Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading, and Plaintiff must re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. The First Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A. No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff elects to file a First Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

**IT IS SO ORDERED.**
**DATED: March 1, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**