IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARCUS ROGERS,<br><br>    Plaintiff,<br><br>v.<br><br>PHIL MARTIN and VIPIN SHAH,<br><br>    Defendants. | Case No. 3:16-CV-01294-NJR-GCS |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Marcus Rogers, an inmate in the custody of the Illinois Department of Corrections, alleges that Defendants Phil Martin and Vipin Shah were deliberately indifferent to his neck and shoulder pain while he was incarcerated at Robinson Correctional Center in 2016. Before the Court are Defendants' motions for summary judgment on the merits of this claim. (Docs. 51, 59). For the reasons delineated below, the Court grants Defendant Phil Martin's motion and denies the motion for summary judgment filed by Defendant Vipin Shah.

### Factual Background

Plaintiff Marcus Rogers, an inmate in the Illinois Department of Corrections since 2015, arrived at Robinson Correctional Center on January 22, 2016. He began complaining of pain in his neck and right shoulder in February 2016. On February 8, 2016, Rogers was seen by a nurse in the healthcare unit. His medical records reflect that he described his

pain as sharp and continuous. The nurse gave him 200 mg of Ibuprofen to take three times per day for his pain, and she noted that he should return to the healthcare unit if his symptoms worsened or interfered with daily functioning. (Doc. 60-1, p. 2).

Rogers saw a nurse again on March 1, 2016. He reported sharp, continuous neck and shoulder pain reaching down to his right hand, and, according to his medical records, told the nurse that the Ibuprofen helped "some." (Doc. 60-1, p. 3). The nurse referred him to a doctor. Defendant Vipin Shah, a doctor, saw Rogers on March 3, 2016. Dr. Shah examined Rogers and noted a normal range of motion for his right arm and a questionable contusion or bruised muscle on his right neck and shoulder. He recommended that Rogers take long, hot showers, as needed, and he prescribed 600 mg of Ibuprofen to be taken three times per day for thirty days. (Doc. 60-1, p. 4).

Rogers returned to the healthcare unit on March 16, 2016, and was seen by a nurse. He reported that he had neck pain that went across his shoulders and down to his thumb and that he was experiencing numbness. The nurse referred him to a physician, and Rogers saw Dr. Shah on March 18, 2016. Rogers told Dr. Shah that he woke up like he was shot with pain from his neck to his thumb. He explained that he had been lifting weights in excess of 200 pounds the day before his pain started and that the pain medication was not helping, though he continued to take it. Rogers also told Dr. Shah that he could not lie down on his right side. Dr. Shah noted that Rogers's thumb was swollen due to possible alcoholism or gout, and he ordered an x-ray. Dr. Shah also ordered blood work to determine whether Rogers had arthritis. (Doc. 60-1, p. 5-6).

Rogers had an x-ray of his right shoulder and cervical spine on March 21, 2016.

The x-ray of his shoulder showed no acute bony injury and mild degenerative changes at the right acromioclavicular joint. The x-ray of his cervical spine showed mild spondylitic changes (i.e., mild degenerative changes or arthritis).

Dr. Shah saw Rogers for a follow-up appointment on April 1, 2016. Rogers reported that his pain medications were not helping. Dr. Shah noted that Rogers's neck movement was okay and that his right arm was questionably numb. He also noted that his x-ray showed degenerative changes and that his bloodwork showed high blood urea nitrogen ("BUN"), a measurement of kidney and liver function, and low high-density lipoprotein ("HDL") cholesterol, the "good" cholesterol. Dr. Shah noted the risk for heart disease or stroke and instructed Rogers to lose weight, to exercise, and to return to the healthcare unit, as needed. He also prescribed Rogers Naproxen for his pain instead of Ibuprofen, and he granted him a low-bunk permit. (Doc. 60-1, p. 7-8).

On April 11, 2016, Rogers reported to a nurse at sick call that the Naproxen he had been taking was not working, and he was referred to a physician. On April 18, 2016, Dr. Shah examined Rogers again and noted that Rogers had gained five pounds. Rogers told Shah that the pain medications were not strong enough, but Dr. Shah did not adjust his pain medication. Dr. Shah noted that Rogers was extremely obese with degenerative arthritis in his cervical spine. After reviewing his bloodwork, Dr. Shah ordered an EKG to determine the health of Rogers's heart. The EKG, performed on May 4, 2016, was normal. (Doc. 60-1, p. 9-11). After the EKG, Rogers did not seek further medical treatment at Robinson before he transferred to East Moline Correctional Center in October 2016.

At all times relevant to Rogers's complaint, Defendant Phil Martin was the Health

Care Unit Administrator ("HCUA") at Robinson. His background is in nursing, and, according to Martin, only physicians and physician's assistants have the authority to prescribe medication or a course of treatment for a patient. As a nurse and the HCUA, Martin lacks the authority to diagnose conditions, to recommend or order treatments or tests, or to make medical referrals on behalf of inmates. He also was not responsible for scheduling appointments for inmates. That was handled by Wexford medical records staff. According to Martin, he never provided Rogers with medical treatment or tests, nor did he prescribe him any medications. (Doc. 52-1). Martin did respond, however, to two grievances filed by Rogers about his pain issues on behalf of the healthcare unit.

## LEGAL STANDARDS

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir. 2014), *citing* FED. R. CIV. P. 56(a). *Accord Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.,* 753 F.3d 676, 681-82 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012); *Delapaz v. Richardson*, 634

F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542 (7th Cir. 2014).

**II.     Eight Amendment Deliberate Indifference**

The Eighth Amendment prohibits cruel and unusual punishments, and the deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A prisoner's dissatisfaction with a medical professional's prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the treatment is so "blatantly inappropriate a to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)(quoting *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974)).

In order to prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). The first consideration is whether the prisoner has an "objectively serious medical condition." *Arnett*, 658 F.3d at 750. *Accord Greeno*, 414 F.3d at

653. "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Hammond v. Rector*, 123 F. Supp. 3d 1076, 1084 (S.D. Ill. 2015) (citing *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir.2014)). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm") ((internal quotation marks omitted) (emphasis added).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Id.* at 653. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *see also Hammond v. Rector*, 123 F. Supp. 3d 1076, 1086 (S.D. Ill. 2015) ("isolated occurrences of deficient medical treatment are generally insufficient to establish . . . deliberate indifference"). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)(citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot

be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (citing *Zaya v. Sood*, 836 F.3d 800, 805-06 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did," *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016))(alterations in original). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment, however, where the treatment is known to be ineffective but is chosen anyway. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

## ANALYSIS

Defendants do not dispute that Rogers's pain was an objectively serious medical condition. Instead, Defendant Martin argues that he was not personally involved in Rogers's medical treatment, as his only involvement with Rogers was in relation to grievance responses, and that he reasonably assumed that Rogers was receiving adequate care. Defendant Shah maintains that he provided Rogers with appropriate care and that he was not deliberately indifferent to the pain Rogers experienced.

### I.     Phil Martin

Rogers claims that as the Health Care Unit Administrator at Robinson, Martin

oversaw the day-to-day operations of the healthcare unit and, as a result, is responsible for the treatment Rogers received and for the perceived failure to refer Rogers to a specialist. There is no evidence, however, that Martin had the authority to refer Rogers to an outside specialist. To the contrary, Martin avers that he lacks authority to diagnose patients and that he cannot recommend or order treatments, examinations, or tests. He also maintains that he cannot make medical referrals on behalf of inmates. Those decisions are left to the treating physicians. Other than conjecture by Rogers, there is no evidence to support his argument that fault lies with Martin.

As to Martin's involvement in Rogers's overall care, he maintains that he never treated Rogers and that never prescribed any medications. Rogers testified at his deposition that he thought he may have been seen by Martin once, though he could not describe Martin, and there is no evidence in his medical records supporting his claim. While Martin may have had some subjective knowledge about Rogers's pain because he responded to two grievances, there is insufficient evidence to show that he knowingly or recklessly disregarded it. As such, Martin is entitled to summary judgment.

## II. Dr. Vipin Shah

Dr. Shah maintains that he was not deliberately indifferent to Rogers's pain, but a reasonable juror could conclude otherwise. While Rogers focuses largely on his request for an MRI, he also mentions the lack of proper medication he received from Dr. Shah. On March 16, 2016, Rogers reported to a nurse that the Ibuprofen he was taking was not working, and he told Dr. Shah the same on March 18. In response, Dr. Shah ordered an x-ray, but he did not change or modify Rogers's prescription. When Rogers again

reported that his medication was not helping his pain to Dr. Shah on April 1, 2016, Dr. Shah switched his medication to Naproxen. Rogers told a nurse that the Naproxen also was not working during an April 11, 2016 examination, but there's no evidence his prescription was changed or modified in any way, even after Dr. Shah examined him on April 18, 2016. Dr. Shah ordered an EKG in response to Rogers's complaints.

There is no evidence or testimony that Dr. Shah chose a pain medication regimen based on professional judgment as to what Rogers needed. While Dr. Shah provided regular treatment to Rogers, a reasonable juror could conclude that the failure to address his complaints that he was in pain and that his pain medication was ineffective amounts to deliberate indifference. As such, Dr. Shah is not entitled to summary judgment.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant Phil Martin's motion for summary judgment (Doc. 51) and **DENIES** Defendant Vipin Shah's motion for summary judgment (Doc. 59). At the close of the case, the Clerk of Court shall enter judgment in favor of Defendant Phil Martin and against Plaintiff Marcus Rogers. Magistrate Judge Gilbert C. Sison is **DIRECTED** to recruit counsel for Plaintiff Marcus Rogers and to set this action for a settlement conference.

**IT IS SO ORDERED.**

DATED: September 25, 2019

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**